1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AYANNA WEATHERSBY,

          Plaintiff,

    v.

FCA US, LLC,

          Defendant.

Case No.  24-cv-08779-RS

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

      Ayanna Weathersby sued FCA US, LLC in California state court, asserting four causes of action under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq*. *See* Dkt. 1 (Notice), Ex. 1 (Complaint). She alleged that defects in her 2019 Dodge Challenger rendered the vehicle substantially worthless and that FCA did not comply with its obligations under the parties' warranty agreement. *See* Complaint, ¶¶ 12–15. FCA timely removed the case to federal court based on diversity jurisdiction. *See* Notice, ¶ 16. Weathersby moves to remand the case to state court. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for December 4, 2025, is vacated. Because the parties are completely diverse and amount in controversy exceeds the jurisdictional threshold, the motion is denied.

## I. BACKGROUND

      In 2019, Weathersby and FCA entered a warranty contract regarding a 2019 Dodge Challenger. *See* Complaint, ¶ 6. The contract included a basic warranty covering "the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that

1    is defective in material, workmanship or factory preparation." Complaint Ex. A, at 5. It also

2    covered some damage to specific components of the vehicle, such as the powertrain. *See id.*, at 8.

3         Weathersby alleged that certain defects including, but not limited to, engine defects,

4    transmission defects, and electrical defects manifested during the contract's coverage period. *See*

5    Complaint, ¶ 11. She further alleged that FCA failed to repair the vehicle pursuant to the terms of

6    the warranty. *See id.*, ¶ 35. That triggered an obligation to replace the vehicle or make restitution

7    to Weathersby. *See* Cal. Civ. Code § 1793.2(d). When FCA failed to comply with that obligation,

8    Weathersby sued in California state court. *See* Cal. Civ. Code § 1794 (providing a cause of action

9    to buyers harmed by violations of the Song-Beverly Act).

10        FCA filed a timely notice of removal in federal court, invoking diversity jurisdiction. *See*

11   Notice, ¶ 16. FCA asserted that the parties were completely diverse and that the amount in

12   controversy exceeds $75,000. *See id.*, ¶¶ 17–32. FCA began its calculation of the amount in

13   controversy by estimating Weathersby's "actual damages." To establish a floor, FCA pointed to

14   Weathersby's discovery response admitting the cost of the vehicle exceeded $25,000. *See id.*, ¶ 24.

15   To establish a ceiling, it provided a declaration stating that the manufacturer's suggested retail

16   price (MSRP) of the vehicle was $32,880. *See id.*, ¶ 31. Next, FCA added double the actual

17   damages ($50,000 on the low end, $65,760 on the high end) because the Song-Beverly Act

18   permits a civil penalty of twice the actual damages if the plaintiff establishes that the defendant's

19   failure to comply with its obligations under the warranty was willful. *See* Cal. Civ. Code

20   § 1794(c); Notice, ¶ 31. Finally, FCA noted that attorney's fees are at stake because they are

21   statutorily recoverable, and it submitted several declarations stating that fee awards in like cases

22   regularly exceed $50,000. Almost ten months later, Weathersby filed a motion to remand the

23   action to state court.

24                              **II. LEGAL STANDARD**

25        A defendant may remove a civil action from state to federal court if the district court would

26   have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Where, as here, the

27   defendant removes an action to federal court based on diversity of citizenship, the parties must be

28                                          ORDER DENYING PLAINTIFF'S MOTION TO REMAND
                                            CASE NO. 24-cv-08779-RS

1    completely diverse and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a).

2    There is no dispute here that the parties are completely diverse; the amount in controversy is the

3    only contested requirement.

4         "Generally, the amount in controversy is determined from the face of the pleadings." *Crum*

5    *v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). "Where it is not facially evident

6    from the Complaint that more than $75,000 is in controversy, the removing party must prove, by a

7    preponderance of the evidence, that the amount in controversy meets the jurisdictional

8    threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

9    "Where doubt regarding the right to removal exists, a case should be remanded to state court."

10   *Matheson*, 319 F.3d at 1090.

**III. DISCUSSION**

11

12   A.  Face of the Complaint

13        The starting point in determining the amount in controversy is the face of the pleadings.

14   Weathersby's state court complaint alleged that she "suffered *damages* in a sum to be proven at

15   trial in an amount that is not less than $35,001." Complaint, at 3 (emphasis added). FCA contends

16   that this represents the minimum amount of *actual* damages that Weathersby has placed in

17   controversy. After applying the two times civil penalty and baking in even a modest quantum of

18   attorney's fees, the *total* amount in controversy is, in FCA's view, well over $75,000.

19        FCA's construction of the complaint is unpersuasive. The allegation that Weathersby is

20   entitled to at least $35,001 is patently intended to meet the jurisdictional threshold for an unlimited

21   civil action in California state court. *See* Cal. Civ. Proc. Code § 85(a) (setting the threshold).

22   California law permits Weathersby to calculate the amount in controversy using all sources of

23   recovery, including civil penalties, save attorney's fees. *See id.* (defining the "amount in

24   controversy" as "the amount of the demand[] or the recovery sought . . . exclusive of attorneys'

25   fees, interest, and cost."). There is, therefore, no reason to think that the amount-in-controversy

26   allegation in the state court complaint excluded the value of the civil penalties available under the

27   Song-Beverly Act. *Hernandez v. FCA US, LLC*, 2025 WL 504366, at *2 (C.D. Cal. Feb. 13, 2025)

28

ORDER DENYING PLAINTIFF'S MOTION TO REMAND
CASE NO. 24-cv-08779-RS

3

1    ("Given that the obvious purpose of the complaint's statement of damages is to meet the amount-

2    in-controversy requirement for an unlimited state case, Plaintiff's claim of damages 'not less than

3    $35,001' is not a clear statement of *actual* damages.").

4              To be sure, district courts in California have often adopted FCA's position. *See, e.g.*, *Marx*

5    *v. FCA US LLC*, 2025 WL 2446551, at *3 (N.D. Cal. Aug. 25, 2025) ("[T]he complaint expressly

6    states that the $35,001.00 refers to the minimum amount of 'damages' sought, and 'damages' are a

7    different type of recovery than civil penalties and attorneys' fees."). *Valdez v. FCA US LLC*, 2025

8    WL 732241, at *2 ("Plaintiff's separation of damages from civil penalties and attorney's fees in

9    the Prayer for Relief demonstrates the Complaint's allegation of $35,001.00 in damages is

10   separate from and in addition to civil penalties and attorney's fees."). Those cases are

11   unpersuasive for two reasons. First, they fail to explain *why* a state court plaintiff would exclude

12   statutorily available civil penalties from the amount-in-controversy calculation. If state law

13   permits the plaintiff to include those penalties in the estimate, it will always work to her advantage

14   to do so. That makes it much more likely that the amount-in-controversy estimate includes the

15   available civil penalties.

16             Second, those cases read the term "damages" in the complaint as exclusive of civil

17   penalties because they conceive of damages and civil penalties as qualitatively different forms of

18   relief. *See Valdez*, 2025 WL 732241, at *2. However, under the Song-Beverly Act, civil penalties

19   are available whenever the plaintiff "establishes that the failure to comply was willful." Cal. Civ.

20   Code § 1794(c). In that way, California law's provision of civil penalties is akin to a statutory

21   allowance for punitive damages, which are—as the name suggests—a variety of "damages." Both

22   are meant to punish especially egregious conduct by the defendant, and both permit the plaintiff to

23   recover beyond the amount by which she was injured. It is thus perfectly plausible that

24   Weathersby's use of the term "damages" includes available civil penalties.

25        B.   Evidence of the Amount in Controversy

26             Though the amount in controversy is not evident from the face of the complaint, FCA has

27   established by a preponderance of the evidence that it exceeds $75,000. The amount in

28                                                          ORDER DENYING PLAINTIFF'S MOTION TO REMAND
                                                            CASE NO. 24-cv-08779-RS

United States District Court
Northern District of California

1    controversy has three components: actual damages, civil penalties (equal to two times actual

2    damages), and attorney's fees.[1] As noted, FCA estimated actual damages as between $25,000 and

3    $32,880, the minimum purchase price to which Weathersby admitted and the MSRP of the

4    vehicle, respectively. Weathersby argues that either figure is an improper estimate of actual

5    damages because neither accounts for the decline in value attributable to Weathersby's use of the

6    vehicle prior to the discovery of the defects—the so-called "mileage offset."

7         On this point, too, district courts in California are divided. Many consider the mileage

8    offset to be "both relevant and important to the calculation of amount in controversy." *Bourland v.*

9    *Ford Motor Co.*, 2020 WL 5797915, at *4 (N.D. Cal. Sept. 29, 2020); *see Cox v. Kia Motors Am.,*

10   *Inc.*, No. 20-CV-02380-BLF, 2020 WL 5814518, at *3 (N.D. Cal. Sept. 30, 2020) ("This statutory

11   offset, referred to by some courts as the 'mileage offset,' properly is considered when determining

12   the amount in controversy for jurisdictional purposes.").[2] Others characterize the mileage offset as

13   a defense which may ultimately reduce the defendant's liability but which need not be considered

14   when assessing what the plaintiff has placed in controversy. *See, e.g.*, *Pristave v. Ford Motor Co.*,

15   2020 WL 4883878, at *3 (C.D. Cal. Aug. 20, 2020); *Selinger v. Ford Motor Co.*, 2023 WL

16   2813510, at *8 (C.D. Cal. Apr. 5, 2023).

17        FCA did not need to account for the mileage offset in calculating the amount in

18   controversy. At bottom, the amount in controversy is what the *plaintiff* has chosen to put in

19   dispute. The plaintiff is free to draft her complaint in a manner that places less in dispute, thereby

20   circumscribing federal jurisdiction. In Song-Beverly Act cases, the plaintiff often does just that by

21   specifying how many miles she put on the car. In *Cox*, for example, the plaintiffs alleged that they

22

23   ───────────────────

24   [1] Though the amount in controversy does not include attorney's fees in California state court, they
     must be included when calculating the amount in controversy for purposes of federal jurisdiction.
     *See Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

25   [2] In *Schneider v. Ford Motor Company*, the Ninth Circuit approved the use of a mileage offset in
     calculating the amount in controversy. *See* 756 Fed. App'x 699, 701 n.3 (9th Cir. 2018)

26   (unpublished). However, that case stopped short of holding that a mileage offset *must* be used
     when calculating the amount in controversy. Moreover, as an unpublished decision, it is only as

27   useful as its persuasive value.

28                                                    ORDER DENYING PLAINTIFF'S MOTION TO REMAND
                                                      CASE NO. 24-cv-08779-RS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   "purchased the vehicle in December 2013 and presented it for repair more than four years later

2   after driving the vehicle approximately 100,000 miles." WL 5814518, at *4. That limited the

3   maximum recovery "to a legal certainty," placing the amount in controversy below the

4   jurisdictional threshold. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938);

5   *see Cox*, WL 5814518, at *5.

6          This case is different. Weathersby's complaint is devoid of any allegation regarding the

7   number of miles driven on the vehicle. She alleges that she originally purchased the vehicle in

8   2019, but she does not even specify when the defect first arose. *See* Complaint, ¶ 6. She has,

9   therefore, chosen to place the entirety of the car's original value in controversy. Without question,

10  the evidence adduced before or at trial may reveal that Weathersby is entitled to less than that

11  original value. That, however, does not retroactively make the amount in controversy smaller. *See*

12  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019 ("[T]he amount in

13  controversy reflects the *maximum* recovery the plaintiff could reasonably recover.") (emphasis in

14  original); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in

15  controversy is simply an estimate of the total amount in dispute, not a prospective assessment of

16  defendant's liability."). Therefore, FCA has established that at least $25,000 in actual damages are

17  in controversy.

18         Next, Weathersby objects to FCA incorporating double civil penalties in the amount in

19  controversy. In its view, FCA must provide *evidence* that Weathersby will receive those penalties.

20  That is wrong. By alleging in her complaint that "FCA's failure to comply with its obligations

21  under [section 1793.2(d)] was willful," and that she was therefore "entitled to a civil penalty of

22  two times [her] actual damages," Weathersby placed that sum in controversy. Complaint ¶ 37; *see*

23  *Wickstrum v. FCA USA LLC,* 2021 WL 532257, at *3 (S.D. Cal. Feb. 12, 2021) ("[T]he test is

24  what amount plaintiff put in controversy, not FCA's potential liability.").

25         It is difficult to understand what Weathersby thinks FCA should have done. Weathersby

26  contends that FCA "is required to establish by a preponderance the *willfulness* that might support

27  such an award," Mot, at 12 (emphasis in original), but that would require FCA to offer evidence of

28

ORDER DENYING PLAINTIFF'S MOTION TO REMAND
CASE NO. 24-cv-08779-RS

1     its own liability. FCA cannot do that because, presumably, it does not think that it did anything

2     wrong. *See Arias*, 936 F.3d at 927 (rejecting the notion that, in establishing the amount in

3     controversy, a removing defendant must "prove it actually violated the law").

4          Weathersby points to several district court cases in which civil penalties were excluded

5     from the amount-in-controversy calculation because the defendant made no showing that the facts

6     of the case supported such a penalty. To the extent those cases ask the defendant to "point[] to

7     allegations in the Complaint suggesting award of a civil penalty would be appropriate," *Zawaideh*

8     *v. BMW of N. Am., LLC*, 2018 WL 1805103, at *2 (S.D. Cal. Apr. 17, 2018), FCA has satisfied

9     their requirement. To the extent they ask the defendant to do more—provide *evidence*—of their

10    own willfulness, those cases are unpersuasive. *See, e.g.*, *Quinones v. FCA US LLC*, 2020 WL

11    4437482, at *2 (C.D. Cal. July 31, 2020) ("[W]hile civil penalties are available for *willful* failure

12    to comply with the Song-Beverly Act, Defendant has not offered any evidence of willfulness

13    which might support such an award.") (emphasis in original). Again, a removing defendant does

14    not have to prove its own liability just to get into federal court.

15         Finally, Weathersby contests FCA's estimate of attorney's fees. FCA estimated the value

16    of attorney's fees by offering evidence that plaintiffs' attorneys in similar cases routinely request

17    more than $50,000 in fees. *See* Sheridan Decl. at 2. Weathersby characterizes this evidence as

18    "unsupported," arguing that FCA must "mak[e] some effort to set forth the value of attorneys' fees

19    plaintiff is expected to incur, or that plaintiff has incurred." Mot. at 15. By comparing this case to

20    like cases, that is precisely what FCA has done. After all, *this* case has not proceeded past the

21    preliminary stages, so the best estimate of what will be incurred in *this* case is what has happened

22    in those cases like it. Other courts have endorsed this method of estimating attorney's fees. *See*

23    *Selinger*, 2023 WL 2813510, at *11 ("To determine whether a defendant has satisfied this burden,

24    courts have considered whether the proposed fees match those awarded in similarly situated cases.

25    . .").

26         In any event, the dispute over the precise calculation of attorney's fees is unimportant in

27    light of the amount already in controversy. Assuming $25,000 in actual damages are in dispute

28

United States District Court
Northern District of California

ORDER DENYING PLAINTIFF'S MOTION TO REMAND
CASE NO. 24-cv-08779-RS

(the minimum purchase price to which Weathersby admitted) and double civil penalties are at

stake, the amount in controversy is already at the $75,000. Even a single dollar in attorney's fees

is enough to push the total above the jurisdictional threshold. *See* 28 U.S.C. § 1332(a).[3]

## IV. CONCLUSION

For the foregoing reasons, Weathersby's motion to remand is denied.

**IT IS SO ORDERED**.

Dated: October 29, 2025

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California

---

[3] In the alternative, FCA argues that Weathersby has consented to federal jurisdiction by "actively participating in this action" post-removal, including by "propounding discovery, serving a deposition notice, participating in case management proceedings including case management statements, participating in mediation, and engaging in motions practice." Opp. at 16. Because the motion to remand is denied on other grounds, this argument is not addressed.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND
CASE NO. 24-cv-08779-RS